UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

ROBERT JAMES YOUNG,

                              Petitioner,         05 Civ. 7653 (JGK)

        - against -                               OPINION AND ORDER

CRAIG APKER, WARDEN OF THE FEDERAL
CORRECTIONAL INSTITUTION, OTISVILLE,
NEW YORK,

                              Respondent.[1]
————————————————————————————

JOHN G. KOELTL, District Judge:

        The petitioner, Robert James Young, filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The

petitioner challenges a decision of the U.S. Parole Commission

that revoked his parole and ordered that he be reconsidered for

parole in fifteen years.  For the reasons explained below, the

petition is **denied**.


                              I.

        In his petition Young challenges his imprisonment at the

Federal Correction Institution in Otisville, New York,

following revocation of his parole, as a violation of his due

—————————————————

        [1]  The Warden of the institution where the petitioner is confined is the
proper respondent in this habeas proceeding.  See Billiteri v. U.S. Bd. of
Parole, 541 F.2d 938, 948 (2d Cir. 1976).  Therefore, Warden Apker should be
substituted for the U.S. Parole Commission as the proper respondent and the
caption should be changed accordingly.

process rights under the Fifth Amendment to the United States
Constitution.

On January 31, 1975, Young abducted a ten-year-old girl
and a nineteen-year-old woman, assaulted both of them, and
sexually molested the ten-year-old victim and threatened to
kill her, but instead left the girl naked and tied to a tree.

On August 11, 1975, Young entered a plea of guilty to a
one-count information charging him with Interstate
Transportation of a Kidnapped Person in violation of 18 U.S.C.
§ 1201(a).  On October 7, 1975, Young was sentenced to life
imprisonment for this offense.  Because Young's original
sentence was imposed prior to November 1, 1987, the date on
which the United States Sentencing Guidelines and the abolition
of the parole system took effect, Young was eligible for parole
on his 1975 conviction.[2]

At a parole hearing held in 1984, the U.S. Parole
Commission (the "Commission") continued the matter to a
fifteen-year reconsideration hearing to be held in 1999.  (U.S.
Parole Comm'n Notice of Action at 1, Jan. 4, 1985, Ex. E to
Cert. of Douglas W. Thiessen, Jan. 24, 2006.)  The Commission

---

[2] Congress has several times extended the life of the statute governing
federal parole, 18 U.S.C. §§ 4201–4218, to provide for those prisoners
sentenced prior to November 1, 1987, most recently with the United States
Parole Commission Extension and Sentencing Commission Authority Act of 2005,
Pub. L. No. 109-76, § 2, 119 Stat. 2035, which extended the life of the
Parole Commission through November 1, 2008.

subsequently ordered Young to be paroled effective April 3, 1999 "subject to the Special Mental Health Aftercare Condition." (Notice of Action, Sep. 22, 1998, Ex. F to Thiessen Cert.) Under this condition, Young was required to "participate in an in-patient or an out-patient mental health program as directed by [his] U.S. Probation Officer." (Id.) Young was in fact released from the McKean Federal Correctional Institution, under lifetime parole in the Western District of Michigan, on April 2, 1999. (Cert. of Parole at 1, signed April 1, 1999, Ex. G to Thiessen Cert.) The Certificate of Parole, which Young signed, specified that Young fully understood the conditions of his parole and knew that, if he violated any of those conditions, he could be recommitted. (Id.)

On September 30, 1999, Young's probation officer, Tony Anderson, wrote a letter to case analyst Scott Kubic at the Commission to notify the Commission that Young had failed to comply with his mental health treatment on September 27, 1999. (Letter from Tony V. Anderson at 1, Sept. 30, 1999, Ex. H to Thiessen Cert.) This letter further stated that Young had been evicted from his residence for nonpayment of rent, had failed to notify his Probation Officer of his change of residence as required under the conditions of his parole, and was a suspect in both the recent burglary of his ex-wife's home and a check

3

larceny.  (Id. at 2.)  The Probation Officer indicated that
Young had committed three violations of the conditions of his
parole:  failure to notify his probation officer of a change of
address, failure to respond to a Probation Office Directive to
call the Probation Office, and failure to notify the local
police department of a change of address.  (Id. at 2-3.)  On
the basis of this letter, case analyst Kubic recommended that a
warrant for Young's arrest be issued.  (Warrant Application,
Ex. I to Thiessen Cert.)  On November 1, 1999, the Commission
issued a warrant for Young's arrest.  (Warrant, Ex. I to
Thiessen Cert.)

In May 2000, Young was arrested in Marion County, Ohio,
following an incident in which he was alleged to have
threatened the husband of a recent acquaintance and other
persons with a rifle in the street.  At the time of Young's
arrest for this incident, he was in possession of a loaded
semiautomatic rifle, a power scope, a stun gun, and a butterfly
knife.  (Letter from Tony V. Anderson at 2, Jan. 5, 2001, Ex. J
to Thiessen Cert.; Ohio Uniform Incident Report, Ex. M to
Thiessen Cert.)  On August 31, 2000, Young pleaded guilty in
state court in Ohio to charges of Having a Weapon While Under
Disability and Receiving Stolen Property (with an additional
Firearm Specification), and he was sentenced to a total of four

years' imprisonment.[3]  (Entry of Guilty Plea, Aug. 31, 2000, Ex.

M to Thiessen Cert.; Judgment Entry of Sentencing at 2, Sept.

6, 2000, Ex. M. to Thiessen Cert.)

    Following this conviction, the Commission added a

supplement to its November 1, 1999 parole violator warrant to

reflect the crimes committed in Ohio.  (Supplement, Ex. K to

Thiessen Cert.)  Upon Young's release from state prison in Ohio

on May 21, 2004, the United States Marshals Service executed

the Commission's warrant.  (Executed Warrant, Ex. L to Thiessen

Cert.)  Young was charged with Failure to Report Change in

Residence and with having violated the law in three ways:  by

Having Weapons While Under Disability, by Receiving Stolen

Property, and by Assault with a Dangerous Weapon.  (Summ.

Report of Prelim. Interview at 3, Ex. N to Thiessen Decl.)

A preliminary interview of Young by the U.S. Probation Office

in the Southern District of Ohio was conducted in the presence

of counsel on July 12, 2004, during the course of which Young

admitted that, in September 1999, he had failed to report his

change of residence to his Probation Officer, as required by

the conditions of his parole, and that he had violated the law

---

[3]  Young was sentenced to a term of one year in prison on the count of
Having a Weapon Under Disability, and one year on the count of Receiving
Stolen Property, to run concurrently with each other, with an additional
three-year term imposed on the Firearm Specification to run consecutively to
the other two concurrent terms.  (Judgment Entry of Sentencing at 2, Sept.
6, 2000, Ex. M. to Thiessen Cert.)

by having a weapon while under disability and receiving stolen
property.  (Id. at 2-6.)  On the basis of this interview, the
interviewing Probation Officer concluded that probable cause
existed to believe that Young had violated the conditions of
his parole with respect to all charges.  (Id. at 2.)

     At a final parole revocation hearing before a hearing
examiner from the Commission on November 17, 2004, which Young
attended while represented by counsel, Young admitted both of
the charges against him—failure to report a change in residence
and violating the law in the three ways charged.  (Hearing
Summ. at 1-2, Nov. 19, 2004, Ex. P to Thiessen Cert.)  The
hearing examiner found that, because Young had pointed the
rifle at people rather than merely possessed the rifle, his
violation fell into Category 5, and the Re-parole Guideline
range for his violations was 60-72 months imprisonment.  (Id.)
The hearing examiner recommended a term of 63 months
imprisonment and the imposition of the Mental Health
Aftercare/Sex Offender Counseling condition upon completion of
Young's re-imprisonment.  (Id. at 2-3.)

     A member of the Commission considered the recommendation
on December 8, 2004, and concluded instead that a departure
from the Guidelines was warranted because of Young's lengthy
criminal history and his conduct after being released on
parole.  The Commissioner noted that Young had ten prior

convictions and, within about a year of release on parole,
Young had committed serious violations of the terms of his
parole.  Among various other averments, the Commissioner
asserted that Young had "absconded from supervision by stealing
a car . . . , stealing a gun" and pointing the gun at someone
and threatening to kill him.  (Mem. from Comm'r Deborah A.
Spagnoli, Dec. 8, 2004, Ex. Q to Thiessen Cert.)  The
Commissioner recommended that Young's parole be revoked in
full, with reconsideration in three years.  (Id.)

On April 4, 2005, the Commission revoked Young's parole
and continued his case for a fifteen-year reconsideration
hearing in November 2019 rather than making him eligible for
re-parole after 63 months imprisonment, and it imposed more
stringent conditions in the event that Young should be released
in the future.  (Notice of Action at 1, Apr. 4, 2005, Ex. R to
Thiessen Cert.)  The Commission shared the view that a sentence
above the Guidelines range was warranted because, in light of
the facts of his case, Young was a more serious risk than his
Guidelines range suggested.  (Id. at 2.)

On April 27, 2005, Young filed an appeal with the
Commission's National Appeals Board.  (Appeal, Apr. 27, 2005,
Ex. S to Thiessen Cert.)  On appeal, Young made three principal
arguments.  First, Young argued that the Commission violated
his due process rights under the Fifth Amendment to the United

7

States Constitution by imposing a sentence above the Guidelines range that was based, in part, upon consideration of the circumstances of his original offense (as recorded in his presentence report), which took place thirty years earlier, and that the Commission exceeded its statutory authority by considering the original offense conduct rather than considering only conduct that had taken place since the preceding parole hearing in 1999.  Young also denied that he had stolen a car when he left Michigan for Ohio in September. (Id.)  Second, Young argued that the Commission violated the ninety-day statutory limit set forth in 28 C.F.R. § 2.49(f) because his revocation hearing on November 17, 2004 took place almost six months after the execution of the warrant against him on May 21, 2004.  (Id.)  Third, Young argued that the Commission had failed adequately to consider his psychiatric history and his serious health problems in imposing a sentence above the Guidelines range.  (Id.)

On July 19, 2005, the National Appeals Board issued a decision affirming the sentence imposed by the Commission with two exceptions:  It vacated the order of a semiannual polygraph test as a condition, and it modified the reasons for the sentence to exclude any reference to allegations that Young stole a car.  (Notice of Action on Appeal at 1, July 19, 2005, Ex. T to Thiessen Decl.)  The National Appeals Board rejected

Young's argument that the Commission could not consider his original offense, stating that the Commission is required by statute to consider "all relevant information about the prisoner, including the 'history and characteristics of the prisoner.'" (Id.) The Board noted, "You have demonstrated that you are capable of committing a violent offense against a child, and this capacity is relevant to any assessment of the risk of you committing another offense and the possibility that the next offense could be as serious as your original offense." (Id.)

The National Appeals Board conceded that Young's parole revocation hearing took place more than 90 days after the warrant against him was executed, but found that Young had failed to demonstrate prejudice as a result of the delay. (Id. at 2.)

The National Appeals Board concluded that Young's record prior to the crime committed in 1975, the circumstances surrounding Young's federal offense in 1975, his failure to comply with the conditions of his parole only a few months after release, and the circumstances of the crimes Young committed in Ohio in 2000—particularly the fact that he was in possession of several weapons and threatened people with a rifle—all justified the Commission's decision to impose a sanction higher than the Guidelines range. (Id. at 1-2.)

On August 17, 2005, Young commenced this action by filing
a petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2241.[4]

## II.

"Federal court review of parole commission decisions is
extremely limited, because the [C]ommission has been granted
broad discretion to determine parole eligibility." Bialkin v.
Baer, 719 F.2d 590, 593 (2d Cir. 1983).  This Court therefore
reviews the decisions of the Commission for abuse of discretion
and must uphold action taken by the Commission if there is a
rational basis for the Commission's decision.  Id.; see also
Crutchfield v. U.S. Parole Comm'n, 438 F. Supp. 2d 472, 476
(S.D.N.Y. 2006).  Accordingly, a reviewing "court may not
substitute its own judgment for that of the [C]ommission."
Bialkin, 719 F.2d at 593.

Young's petition advances four main contentions, three of
which are similar to the contentions he advanced in his appeal
to the National Appeals Board.  Each of Young's arguments is
addressed in turn.

This Court appointed counsel for Young and counsel
submitted a Supplemental Memorandum which argued three issues:

---

[4]  The petition is signed and dated August 17, 2005 and was received by
the Pro Se Office on August 22, 2005.

First, that the Parole Commission's delay in holding the
revocation hearing and its further delay in providing a timely
notice of action deprived Young of his Fifth Amendment due
process rights; second, that the Commission's failure to
provide Young with the documents before the Parole Hearing
Examiner deprived Young of his Fifth Amendment due process
rights; and third, that the sentence was arbitrary and
capricious.  These arguments supplement the petitioner's
arguments and are considered with them below.

### A.

First, Young argues that the Commission was required to
give him a revocation hearing within 90 days of the execution
of the parole violator warrant for his arrest, and that he did
not receive a hearing until approximately 180 days after he was
taken into federal custody on May 21, 2004.

The Commission concedes in this action that Young's
hearing took place on November 17, 2004, more than 90 days
after the violator warrant was executed, and that the delay was
contrary to the time limit established by 28 C.F.R. § 2.49(f).[5]
(Respt.'s Mem. of Law in Opp'n to Pet. for Writ of Habeas
Corpus 8-9.)  The National Appeals Board also conceded in its

_____

[5]  The 90-day time limit for holding a revocation hearing after executing
a parole violator warrant also appears in 18 U.S.C. § 4214(c).

decision that Young's revocation hearing was not timely.
(Notice of Action on Appeal at 2, July 19, 2005, Ex. T to
Thiessen Cert.)  However, as the National Appeals Board
correctly found, Young must show prejudice resulting from the
delay or bad faith on the part of the Commission.  In Heath v.
U.S. Parole Commission, 788 F.2d 85 (2d Cir. 1986), the Court
of Appeals for the Second Circuit held that, where the
Commission's "dispositional review was untimely, absent
prejudice or bad faith on the Commission's part, the
appropriate remedy is not a writ of habeas corpus, but a writ
of mandamus to compel compliance with the statute."  Id. at 89.
The Court of Appeals found that "the legislative history of the
Parole Commission and Reorganization Act of 1976, 18 U.S.C.
§§ 4201 et seq. (1976), reveals that the remedy which Congress
contemplated for the Commission's failure to comply with
statutory time limits was not release from confinement but a
writ of mandamus to compel compliance."  Id.  While Young's
counsel argues that the delay was a violation of due process,
he concedes that to establish a violation there must be a
showing that the delay was unreasonable and caused prejudice to
the petitioner.

　　　There is no evidence of unreasonable delay, bad faith, or
prejudice resulting from the delay.  A preliminary interview of
the petitioner was conducted on July 12, 2004, less than two

months after the execution of the warrant, and the petitioner did receive a revocation hearing on November 17 2004, just under six months after the violator warrant was executed. Similar delays have been held not to constitute prejudice per se.  See, e.g., Villarreal v. U.S. Parole Comm'n, 985 F.2d 835, 837-38 (5th Cir. 1993) (holding that a revocation hearing held 154 days after arrest was not prejudicial per se despite petitioner's contention that delay led him to "lose contact with three witnesses"); U.S. ex rel. Moore v. Conner, 284 F. Supp. 2d 1092, 1095, 1101 (N.D. Ill. 2003) (holding that seven-month delay between notice of probable cause of parole violation and revocation hearing was not prejudicial).

There is no indication that the petitioner sought a writ of mandamus to compel a hearing within the prescribed 90-day period, or that he or his attorney raised any procedural objections based on timeliness at the November 17, 2004 hearing.

There is also no showing that the result of Young's hearing would likely have been different if it had taken place within 90 days of the execution of the warrant.  Young admitted at both the preliminary interview and the revocation hearing that he had committed the first violation charged, changing his residence without notifying his probation officer.  (Summ.

Report of Prelim. Interview at 3, Ex. N to Thiessen Cert.;
Hearing Summary at 2, Ex. P to Thiessen Cert.)

The same is true with respect to the second violation.
Young also admitted at the revocation hearing that he had
committed subsequent crimes while released on parole.  (Hearing
Summary at 2, Ex. P to Thiessen Cert.)  Specifically, Young
admitted that he had possessed a firearm, and that he had
pointed the firearm at several people.  (Id.)[6]  Moreover, Young
pleaded guilty in Ohio state court to charges of Having Weapons
While Under Disability and Receiving Stolen Property with a
firearm specification.  (Entry of Guilty Plea, Ex. M to
Thiessen Cert.)  Young therefore has not shown any prejudice as
a result of not having his revocation hearing within 90 days of
the execution of the violator warrant and cannot obtain habeas
relief on this ground.


                              B.

     Young next asserts that he is entitled to relief because
the Commission did not provide him with a written copy of its
April 4, 2005 decision within 21 days.[7]  His counsel raises a

---

[6]  Young alleged in his appeal of the Commission's decision that he
qualified this admission by saying he "had been threatened . . . with bodily
harm, not just [by] the husband, but also the companions that were with
him."  (Addendum to Appeal at 2, Apr. 27, 2005, Ex. S to Thiessen Cert.)

[7]  In the petition Young asserts that 28 C.F.R. § 2.50-02(8) and (9)
create this duty, but there do not appear to be any such sections in the

similar argument and asserts that this was a violation of due process.  As an initial matter, the Court notes that the allegations in the petition are inconsistent with Young's earlier statements in his appeal to the National Appeals Board. In the petition Young alleges that, after the Commission issued its decision on April 4, 2005, he "was eventually given a written copy of the Commission's determination on May 4, 2005, on the last day that petitioner was suppose[d] to appeal any decision by the Parole Commission." (Pet. at 3 ¶ 7.)  Young also alleges that he "still managed to put together an appeal and mail it on . . . May 4, 2005." (Id. at 4 ¶ 7.)  In his administrative appeal, however, Young stated that "[i]t was only due to a matter I had written to the public defender that I was given a copy by her on April 15, 2005, 11 days after the date of the Notice of Action." (Addendum to Appeal, Apr. 27, 2005, Ex. S to Thiessen Cert.)  Young signed his appeal on April 27, 2005, well within the applicable thirty-day time limit, and the Parole Commission stamped the appeal as received on May 2, 2005. (Appeal at 1, Apr. 27, 2005, Ex. S to Thiessen Cert.)  It is therefore clear that Young did not receive the Commission's decision for the first time on May 4, 2005, as

---

Commission's Rules and Procedures Manual.  However, 18 U.S.C. § 4214(e) states that the Commission should provide a written notice of its determination "not later than twenty-one days, excluding holidays, after the date of the revocation hearing."

alleged in the petition, and that he did not "manage[] to put together" his appeal on the last possible day permitted.

The record reflects that the Commission provided a copy of its decision to Young's attorney shortly after it was issued, and that Young personally received a copy within the period prescribed by the regulation.  The Commission's decision, and thus its subsequent notice, did occur more than twenty-one days after Young's revocation hearing, which was held on November 17, 2004.  Young argues that, upon reaching its decision, the Commission should have provided him with a copy of its decision directly rather than through counsel.  But even if that were true, Young cannot show that he was prejudiced either by the Commission's failure to provide him directly with a copy within twenty-one days of its decision or by the Commission's failure to reach its decision swiftly after his revocation hearing because Young did receive a copy of the decision and his appeal was timely.  The National Appeals Board made no suggestion that the appeal was not timely and decided the appeal on the merits. (See Notice of Action on Appeal, Ex. T to Thiessen Cert.) Young has also failed to establish that the Commission acted in bad faith.  There is therefore no basis for habeas relief on this ground.

## C.

Young next argues that the Commission violated his Fifth Amendment right to due process both by considering the nature of his original offense in its revocation decision and by failing to provide him with notice of an allegation that he stole a car when he left Michigan for Ohio in September 1999-- an allegation he denies.  These arguments were presented to the National Appeals Board, which did not find a basis to disturb the Commission's decision.

### 1.

Young advances two principal lines of argument with respect to the Commission's consideration of the circumstances surrounding his original offense.  First, he argues that the original offense should not have been considered because the offense happened long ago and his conduct following his release on parole in April 1999 was not of the same character.  Second, he argues that the Commission considered his original offense conduct when it made its initial decision to release him on parole, and that it should not count against him again because the Commission gave that conduct full consideration, but found that Young was eligible for parole in April 1999.

As an initial matter, there is no evidence for Young's assertion in the petition that the nature of the original

17

offense conduct, rather than the nature of his parole
violations, was the primary motivation for the Commission's
decision.  Rather, both the Commission's decision and that of
the National Appeals Board found that the circumstances of the
parole violations, viewed in combination with Young's entire
history, including the original offense conduct, justified the
sanction imposed.  (See Notice of Action at 2, Ex. R. to
Thiessen Cert.; Notice of Action on Appeal at 1, Ex. T to
Thiessen Cert.)

There is no basis for excluding from consideration the
original offense conduct because it dates from 1975.  The
Commission is authorized, and is indeed required, to consider
any relevant information about the prisoner when making a
parole determination.  See 18 U.S.C. § 4207 (providing that the
Commission shall consider, in any decision on release,
"official reports of the prisoner's prior criminal record . . .
[and] such additional relevant information concerning the
prisoner (including information submitted by the prisoner) as
may reasonably be available"); see also 28 C.F.R. § 2.19(a)(2)
(providing that the Commission, in making a parole or reparole
determination, "shall consider ... [o]fficial reports of the
prisoner's prior criminal record"); 28 C.F.R. § 2.19(b)(1)
(providing that the Commission "shall also [take] into
consideration such additional relevant information concerning

the prisoner . . . as may be reasonably available"); Tobon v. Martin, 809 F.2d 1544, 1545 (11th Cir. 1987) (per curiam) (same).  The National Appeals Board therefore stated the law correctly when it concluded that considering the original offense conduct was appropriate because, "[i]n any release decision, the Commission is required to consider all relevant information about the prisoner, including the 'history and characteristics of the prisoner.'"  (Notice of Action on Appeal at 1, Ex. T to Thiessen Cert.)

The hearing examiner's decision that Young should serve 63 months in prison for his parole violations took into account that Young's conduct in relation to his parole violations did not involve the same type of conduct as the original offense and that Young did not fire a weapon, although he possessed the weapon and pointed it at someone.  (Hearing Summ. at 2, Ex. P to Thiessen Cert.)  The Commission was therefore presented with and considered this argument.  In rejecting the hearing examiner's recommendation, the Commission could rationally have concluded that, although not of the same nature as his original offense, Young's conduct after his release was sufficiently serious, especially when his original offense conduct was considered, to warrant a more severe sanction.

Nor does the fact that the Commission decided to release Young on parole after having considered his original offense in

1999 preclude the Commission's partial reliance on the circumstances of the original offense in reaching its conclusion to revoke Young's parole for a longer period than that recommended by the hearing examiner.  While the Commission did decide in 1999 that, despite the nature of the original offense, Young would be able to reintegrate successfully into the community, subsequent events provided a basis for the Commission's conclusion that Young was a continuing danger to the public.

Young also asserts that consideration of the original offense conduct is contrary to principles of due process under the Supreme Court's decision in Morrissey v. Brewer, 408 U.S. 471 (1972).  Morrissey held that the due process clause imposes certain procedural requirements on parole revocation hearings. The Court in Morrissey held:

> Our task is limited to deciding the minimum requirements of due process.  They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey, 408 U.S. at 488-89.  Young was afforded all of these requirements at the initial parole revocation hearing, as

required by Morrisey.  Indeed, Young admitted the charges that
formed the basis for his parole revocation.

Young also argues that he is entitled to relief because he
did not receive advance notice that the Commission would
consider his original offense conduct in determining his
eligibility for reparole.  The Commission is empowered to
consider all relevant information, including the original
offense conduct, in determining when, if ever, a parolee whose
parole has been revoked for violations will be eligible for
reparole.  The Commission was not required to provide advance
notice of every factor it considers in its decision as to the
severity of the sanction imposed, but rather was required to
provide a statement of reasons for its decision once the
decision has been made, which the Commission did in this case.
See Billiteri v. U.S. Board of Parole, 541 F.2d 938, 944-945
(2d Cir. 1976); see also Tobon, 809 F.2d at 1545; Bowles v.
Tennant, 613 F.2d 776, 778-79 (9th Cir. 1980).

Because the Commission was authorized to consider Young's
original offense conduct, and because its action is supported
by a rational basis, the Court is not empowered to disturb that
conclusion on that ground.

**2.**

Young is also not entitled to habeas relief because of the reference in the Commission's original decision to his having stolen a car.  In affirming the Commission's decision to continue Young's case for a fifteen-year reconsideration, the National Appeals Board modified the reasons for that determination, and did not rely on the allegation that Young had stolen a car.  (See Notice of Action on Appeal at 1, Ex. T to Thiessen Cert.)  The National Appeals Board nevertheless found that the other circumstances surrounding Young's parole violation justified the sanction imposed by the Commission irrespective of whether he had stolen a car.  (See id.)

The National Appeals Board, in its review of the Commission's decision, was authorized to modify the reasons for that decision, and to conclude that the sentence imposed was justified even without an allegation that Young had stolen a car.  See 28 C.F.R. § 2.26(c).

The Court cannot conclude on this record that no rational basis exists to support the National Appeals Board's decision. Young does not contest that he has been convicted of multiple felonies over a period spanning four decades.  He also admits that he violated his parole by moving without notifying his probation officer within six months of his release on parole. Moreover, Young admits that, several months after leaving

Michigan, he possessed a stolen weapon which he pointed at another person, and he pleaded guilty to felony charges relating to this conduct.

The petitioner's counsel also argues that the continued incarceration of about three times the minimum provided by the Guidelines was so arbitrary and capricious as to constitute a violation of due process.  However, given the nature of the original offense, and the nature of the parole violations that occurred soon after the petitioner's release on parole, the Parole Commission's decision to depart upwardly from the Guidelines and the degree of departure were not arbitrary and capricious.  See Iuteri v. Nardoza, 732 F.2d 32, 38 (2d Cir. 1984) (Commission acted within its authority by relying on nature of the crime to conclude that parolee was more serious risk than indicated by Guidelines and depart upward from Guidelines); Bialkin, 719 F.2d at 594 (proper for Commission to rely on the number, nature, and frequency of parolee's prior offenses as well as the close proximity of his most recent offense to his prior release on parole in departing upward from the Guidelines).

Given Young's past record, and the nature of his criminal history and his parole violations, the Commission could rationally conclude, as it did, that Young is "a more serious risk than indicated by [his] guidelines [range]" and that he

"poses an exceptionally serious risk to public safety."
(Notice of Action on Appeal at 1, Ex. T to Thiessen Cert.)

### D.

Young argues that the Commission violated his
constitutional rights when it based its decision on re-
imprisonment in part upon a finding that Young committed an
assault with a firearm while released on parole, while he had
not been convicted of that offense.  Young argues that
constitutional principles of separation of powers preclude the
Commission, which is an agency of the Executive Branch, from
determining in the first instance that Young committed such an
assault.  The argument has no merit.

The facts admitted by Young at the hearing justified the
hearing examiner's conclusion that Young's violation included
assault with a firearm.  (Hearing Summ. at 2, Ex. P, Thiessen
Cert.)  The Commission and the National Appeals Board relied in
part on that finding as well.  (Notice of Action at 1, Ex. R to
Thiessen Cert.; Notice of Action on Appeal at 1, Ex. T to
Thiessen Cert.)  There was ample evidence to support that
finding based on the petitioner's own admission of the facts,
and the lack of a criminal conviction for such a charge did not
prevent the Commission from relying on the facts in formulating
the appropriate sanction for Young.

The Court of Appeals for the Second Circuit has held that the United States Parole Board, the Commission's predecessor, could consider evidence of unadjudicated charges and even acquitted charges in determining an appropriate sentence. Billiteri, 541 F.2d at 944.  Other courts have reached the same conclusion.  See, e.g., Whitehead v. U.S. Parole Comm'n, 755 F.2d 1536, 1537 (11th Cir. 1985) (per curiam) (holding that the Commission may revoke parole on the basis of its own finding, by a preponderance of the evidence, that the prisoner engaged in criminal activity, even where the prisoner has not been convicted of that criminal activity); Standlee v. Rhay, 557 F.2d 1303, 1307 (9th Cir. 1977) (holding that a state parole board is not precluded from finding a parole violation based on alleged criminal activity of which a prisoner was acquitted).

The petitioner also cites the Supreme Court's decisions in United States v. Booker, 543 U.S. 220 (2005), Blakely v. Washington, 542 U.S. 296 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), for the proposition that his sentence cannot be enhanced on the basis of facts not found by a jury. Those cases, however, all relate to the requirements of the Sixth Amendment right to jury trial in the context of sentencing after a criminal conviction.  Revocation of parole is of a different nature.  Indeed, the Supreme Court expressly noted in Morrissey v. Brewer that "revocation of parole is not

part of a criminal prosecution and thus the full panoply of
rights due a defendant in such a proceeding does not apply to
parole revocations.  Parole arises after the end of the
criminal prosecution, including imposition of sentence."
Morrissey, 408 U.S. at 480 (citations omitted).  There is no
Sixth Amendment right to have facts in connection with a parole
violation found by a jury.  Cf. Unites States v. Carlton, 442
F.3d 802, 807-10 (2d Cir. 2006) (no right to jury trial for
revocation of supervised release); United States v. Hinson, 429
F.3d 114, 118 (5th Cir. 2005) (same); United States v. Work,
409 F.3d 484, 491 (1st Cir. 2005) ("The law is clear that once
the original sentence has been imposed in a criminal case,
further proceedings with respect to that sentence are not
subject to Sixth Amendment protections.").

     The Commission could, fully consistent with the
Constitution, rationally find that the record before it was
adequate to establish by a preponderance of the evidence that
Young had committed an assault with a firearm, and there is no
basis to disturb its conclusion.


                              **E.**

     In an addendum to his petition dated September 21, 2005,
Young asserts that he was denied adequate access to the
recording of his revocation hearing in November 2004.

                               26

Specifically, Young alleges that he filed a Freedom of
Information Act request seeking the recording and "any and all
information used to determine the parole revocation decision."
(Addendum to Pet. ¶ 1.)  Young claims that he was told that he
could not take possession of the tape, but that he was given an
opportunity to listen to the tape in the prison library on one
occasion.  (Id. ¶ 2.)  Young alleges that, on September 21,
2005, prison officials told him that he "would not have access
to this tape any further," and that he could have the tape sent
to his attorney or to his family for transcription.  (Id. ¶ 3.)
Young argues that he told prison officials that he could not
afford to have a certified transcription of the recording
prepared, and that lack of access to the transcript impedes his
ability to litigate this petition.  (Id. ¶¶ 3-6.)

        The Court attempted to obviate these problems by
appointing counsel for the petitioner and directing that a copy
of the recording and transcript of the revocation hearing be
produced to the petitioner's counsel.  The Court also ordered
that a redacted copy of the petitioner's pre-sentence report be
produced, as well as various psychological reports.  The
redacted pre-sentence report and various psychological reports
were produced to the petitioner's counsel, but the Government
reported that it was unable to locate any tape of the hearing
and that it did not have a transcript.  The Government's

records indicated that a tape of the hearing had previously
been sent to Young.

In his submission to the Court, counsel for Young does not
identify any items in the hearing transcript that would be of
assistance to Young in connection with the current petition,
and both Young and his then-counsel would plainly have been
present at the hearing and aware of what transpired.  Counsel
does argue that the record of the hearing would show what
documents were provided by the parties to the hearing examiner,
and he argues that the failure to provide Young with the
documents that were before the hearing examiner constituted a
violation of Young's right to due process.  However, there is
no basis to conclude that Young and his counsel were not
provided with all of the documents before the hearing examiner.
Moreover, the petitioner made no argument on his appeal that he
was deprived of documents before the hearing examiner.  Cf.
Lynch v. U.S. Parole Comm'n, 768 F.2d 491, 499-500 (2d Cir.
1985) ("[G]iven our clear holding herein that counsel may
obtain disclosure of defendant's pre-sentence report in
connection with parole proceedings . . . , failure to timely
raise this issue before the Commission may lead to a finding
that the right to object to non-disclosure has been waived.").

Young identifies a number of reasons why access to the
recording is important.  However, several of the facts Young

28

hopes to establish with the recording are not in dispute.  For
example, the Commission has acknowledged that Young did not
receive a hearing within 90 days, it has acknowledged that the
hearing examiner recommended that Young be reparoled after 63
months' imprisonment and that it rejected that recommendation,
and there is no dispute that Young has been in federal custody
since May 21, 2004 and was in Ohio state prison for four years
prior to that. The National Appeals Board also did not rely on
the stolen car allegation in its decision, and there does not
appear to be any evidentiary dispute at the parole revocation
hearing that is material to this petition because Young does
not deny that he admitted having committed the parole
violations charged.  The Commission has provided a summary of
the revocation hearing.  (Ex. P to Thiessen Cert.)  The
petitioner has failed to specify any respects in which that
summary is inaccurate or any way in which he would have been
assisted by the tape or transcript of the hearing.  Therefore,
the Government's inability to locate the recording of the
hearing and the absence of a transcript is not a basis for
granting relief.  Cf. Walrath v. Getty, 71 F.3d 679, 682, 684
(7th Cir. 1995) (no due process violation for denying
petitioner access to a transcript of his parole revocation
hearing where the petitioner's behavior subsequent to that
hearing justified parole revocation); Glumb v. Honsted, 891

F.2d 872, 873-74 (11th Cir. 1990) (per curiam) (citing Hrynko
v. Crawford, 402 F. Supp. 1083, 1086-87 (E.D. Pa. 1975)) ("We
know of no federal decision requiring a verbatim transcript of
parole revocation proceedings.").

The Court has carefully considered all of the arguments
raised by the petitioner and by his counsel.  To the extent not
explicitly discussed above, the Court finds them to be without
merit or moot.

## CONCLUSION

For the reasons explained above, the petition for a writ
of habeas corpus is **denied.**

SO ORDERED.

Dated:  New York, New York
        July  17, 2007

John G. Koeltl
United States District Judge

30